UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JERRY EMERSON, <br><br> Petitioner, <br><br> v. <br><br> WARDEN, <br><br> Respondent. | CAUSE NO. 3:19-CV-706-JD-MGG |

OPINION AND ORDER

Jerry Emerson, a prisoner without a lawyer, filed a habeas corpus petition challenging his 2008 conviction for murder and other offenses in Marion Superior Court under cause number 49G01-0805-MR-107649. (ECF 1.) For the reasons stated below, the petition is denied.

I.   BACKGROUND

In deciding the petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Mr. Emerson's burden to rebut this presumption with clear and convincing evidence. *Id.* According to the Indiana Court of Appeals' decision on direct appeal, on July 30, 2007, Mr. Emerson and his friend Samuel Fancher were driving through an Indianapolis neighborhood when they spotted 17-year-old Leroy Moorman and 16-year-old Ryan Sampson. *Emerson v. State*, 909 N.E.2d 521 (Table), 2009 WL 1974552 (Ind. Ct. App. July 9, 2009). They recognized the teenagers as individuals who had broken into their house several months earlier. *Id.* The two men forced Moorman and Sampson into their car at gunpoint and drove them to a vacant

house. *Id.* Once there, they took Moorman and Sampson to a bathroom and shot them. *Id.* Sampson was shot multiple times, including in the head, and died at the scene. *Id.* Moorman was shot in both arms and lay on the floor with his eyes closed pretending to be dead until the men left. *Id.* He then went to a nearby residence for help. *Id.*

Mr. Emerson later described the shooting to an acquaintance, Curtis Williams. *Id.* According to Williams, Mr. Emerson told him, "As soon as I got to the . . . house, I shot that motherf***er dead in the head." *Id.* Mr. Emerson also told him that Fancher was supposed to do the "same thing" to Moorman, but Fancher wanted to "give [him] body shots" even though Mr. Emerson "told him that body shots don't work." *Id.* After this conversation, Williams learned that he was distantly related to Sampson and told police what Mr. Emerson had told him. *Id.* Mr. Emerson was charged with the murder of Sampson, the attempted murder of Moorman under an accomplice theory, criminal confinement, and carrying a handgun without a license. *Id.* The jury found him guilty as charged, and he was sentenced to an aggregate 105-year sentence. *Id.*

On direct appeal, Mr. Emerson raised the following claims: (1) the jury instructions failed to properly inform the jury of the elements of attempted murder under state law; (2) the prosecutor made improper comments during trial; (3) the trial court erred in admitting into evidence a handgun recovered from Fancher's hotel room; (4) the trial court erred in admitting prior bad acts evidence; and (5) the trial court erred in allowing testimony that Moorman was reluctant to testify. *Id.* at *2-*10. The Indiana Court of Appeals determined that all of the claims except for the handgun claim were waived under state law because Mr. Emerson did not lodge a contemporaneous

objection at trial. *Id.* at *2-*10. Waiver notwithstanding, the court reviewed the claims for fundamental error and found none. *Id.* As for the admission of the handgun, the court found any error harmless in light of the substantial evidence of Mr. Emerson's guilty. *Id.* at *7. The court therefore affirmed Mr. Emerson's conviction in all respects. *Id.* at *10. He sought transfer to the Indiana Supreme Court, reasserting all of his claims except for the handgun claim. (ECF 10-8 at 2-4.) The Indiana Supreme Court denied transfer. (ECF 10-2 at 4.)

Thereafter, Mr. Emerson sought post-conviction relief alleging ineffective assistance of trial counsel. *Emerson v. State*, 126 N.E.3d 42 (Table), 2019 WL 1926063 (Ind. Ct. App. May 1, 2019). Following a hearing, the petition was denied. *Id.* at *1. On appeal, Mr. Emerson argued that his trial counsel was ineffective on the following grounds: (1) she failed to object to testimony that Moorman was reluctant to testify; (2) she failed to object to improper comments by the prosecutor; (3) she failed to object to alleged hearsay from a police officer that Moorman had identified Mr. Emerson from a photo lineup; (4) she failed to object to an allegedly erroneous jury instruction; and (5) she failed to move to suppress evidence of an "impermissible" show-up identification of Mr. Emerson's vehicle with Sampson's family members. *Id.* at *2. The court found no merit to these arguments and affirmed the denial of post-conviction relief. *Id.* Mr. Emerson did not seek transfer to the Indiana Supreme Court. (ECF 1 at 2.)

Thereafter, Mr. Emerson filed his federal petition, claiming as follows: (1) his Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process were violated because the jury was not properly instructed; (2) his Sixth Amendment

3

right to a fair trial and Fourteenth Amendment right to due process were violated when the prosecutor commented on his assertion of his speedy trial rights; (3) his Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process were violated when the prosecutor made a comment that invited the jury to draw an inference about his failure to testify; (4) his Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process were violated when the trial court admitted "improper prior bad acts" evidence; (5) his Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process were violated when the trial court admitted the handgun recovered from Fancher's hotel room; and (6) his Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process were violated when the state was allowed to present testimony about Moorman's reluctance to testify. (ECF 1 at 3-4.)

II.     ANALYSIS

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") allows a district court to issue a writ of habeas corpus on behalf of a state prisoner who is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To obtain relief, a petitioner must meet the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is "difficult to meet" and "highly deferential." *Hoglund v. Neal*, 959 F.3d 819, 832 (7th Cir. 2020) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). "It is not enough for a petitioner to show the state court's application of federal law was incorrect; rather, he must show the application was unreasonable, which is a 'substantially higher threshold.'" *Id.* (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). In other words, "[a] petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Hoglund v. Neal*, 959 F.3d 819, 832 (7th Cir. 2020). The exhaustion requirement is premised on a recognition that the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claim in one complete round of state review. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845. This includes seeking discretionary review in the state court of last resort. *Boerckel*, 526 U.S. at 848. The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a claim when: (1)

5

the claim was presented to the state courts and was denied on the basis of an adequate and independent state procedural ground; or (2) the claim was not presented to the state courts and the opportunity to do so has now passed. *Davila*, 137 S. Ct. at 2064; *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

The respondent argues that claims one, two, three, four, and six are all procedurally defaulted. (ECF 10- at 4-6.) As the respondent points out, the Indiana Court of Appeals found that all of these claims were waived under state law due to Mr. Emerson's failure to lodge a contemporaneous objection at trial. *Emerson*, 2009 WL 1974552, at *2-*10. This finding of waiver constitutes an adequate and independent state procedural ground that bars federal habeas review. *See Wainright v. Sykes*, 433 U.S. 72, 81-82 (1977) (holding that failure to comply with state's contemporaneous-objection requirement was an independent and adequate state procedural ground that barred federal habeas review); *Smith v. Gaetz*, 565 F.3d 346, 351 (7th Cir. 2009) ("Where, as here, the state court declined to review an issue that was not properly preserved, the state court decision rests upon a ground that is both independent of the federal question and adequate to support the judgment." (citation and internal quotation marks omitted)). Therefore, these claims are defaulted.

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice. *Davis v. Davila*, 137 S. Ct. 2058, 2064 (2017). Cause sufficient to excuse a procedural default is defined as "some objective factor external to the defense" which prevented the petitioner from pursuing his constitutional claim in state court. *Id.* (quoting *Murray v. Carrier*, 477 U.S.

6

478, 488 (1986)). A habeas petitioner can also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice because he is actually innocent. *House v. Bell*, 547 U.S. 518, 536 (2006).

In his traverse, Mr. Emerson does not provide cause to excuse his default, and instead argues that habeas review is not barred because his "issues were addressed on the merits" by the Indiana Court of Appeals. (ECF 14 at 4.) However, the Indiana Court of Appeals only reviewed his claims for "fundamental error"—a narrow exception to the state's waiver doctrine under which an error is found to be so egregious that the trial court had an obligation to *sua sponte* correct it even without an objection. *See Brewington v. State*, 7 N.E.3d 946, 974 (Ind. 2014). The state court's review of a waived claim for fundamental error does not amount to a merits determination. *Lee v. Davis*, 328 F.3d 896, 900 (7th Cir. 2003) ("[T]he examination required to determine whether there had been fundamental error did not undermine reliance on an independent state procedural ground of waiver[.]"); *Willis v. Aiken*, 8 F.3d 556, 567 (7th Cir. 1993) (holding that "the determination of the Indiana appellate court that no fundamental error resulted . . . rests on an independent and adequate state ground" that precludes federal

7

habeas review, absent a showing of cause and prejudice). Therefore, these claims are defaulted and cannot be considered on the merits.[1]

Mr. Emerson's remaining claim is that the trial court violated his rights by admitting into evidence a handgun recovered from Fancher's hotel room. (ECF 1 at 5.) The respondent argues that this claim is also defaulted, but for a different reason. (ECF 10 at 6.) As the respondent points out, Mr. Emerson presented a claim regarding the admission of the handgun to the Indiana Court of Appeals on direct appeal, but he did not include this claim in his petition to transfer to the Indiana Supreme Court. (ECF 10-8 at 2-4.) His failure to present this claim to the state court of last resort means that it is defaulted. *Boerckel*, 526 U.S. at 848.

Mr. Emerson does not address his default of this claim in his traverse or provide cause for excusing it, but he does make a passing reference to being "actually innocent." (ECF 14 at 8.) "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass" to obtain review of his claims even though they are defaulted. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In this context, "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614,

---

[1] Even though Mr. Emerson does not specifically raise this argument, the court has considered whether he could assert ineffective assistance of counsel as a means of excusing his default of these claims. Attorney error rising to the level of ineffective assistance of counsel can amount to cause sufficient to excuse a procedural default. *Davila,* 137 S. Ct. at 2065. However, the exhaustion doctrine requires that an ineffective-assistance claim be presented to the state court as an independent claim before it may be used to establish cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *Murray*, 477 U.S. at 490. Mr. Emerson argued in the post-conviction proceedings that his trial counsel was ineffective in failing to object at trial on several of the grounds he presents here, but he did not seek review in the Indiana Supreme Court. (ECF 1 at 2.) He therefore did not exhaust an ineffective-assistance claim in one complete round of state review, precluding him from asserting such a claim here to excuse his defaults.

8

623 (1998) (internal quotation marks omitted). Thus, to raise a credible claim of actual innocence, the petitioner must have "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence[.]" *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (observing that a prisoner claiming actual innocence "must have documentary, biological (DNA) or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim"). The petitioner must demonstrate that in light of this new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. This is a "demanding" standard that can be met only in "extraordinary" circumstances. *House v. Bell*, 547 U.S. 518, 538 (2006).

Other than broadly invoking the actual innocence exception, Mr. Emerson does not point to *any* new evidence—let alone powerful or reliable evidence—to show that he is factually innocent of these offenses. He has not met the demanding actual innocence standard, and the court cannot consider this claim on the merits. The petition must be denied.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were

adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, Mr. Emerson's claims are procedurally defaulted. The court finds no basis to conclude that jurists of reason could debate the outcome of the petition or find a reason to encourage him to proceed further. Accordingly, the court declines to issue him a certificate of appealability.

III. CONCLUSION

For the reasons set forth above, the petition (ECF 1) is DENIED, and the petitioner is DENIED a certificate of appealability. The clerk is DIRECTED to close this case.

SO ORDERED on December 14, 2020

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT